1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12
13      HOWARD APPEL, *et al.*,

14                                    Plaintiffs,

15          v.

16      CONCIERGE AUCTIONS, LLC, *et al.*,

17

18                                    Defendants.

19
20

Case No. 17-cv-02263-BAS-MDD

**ORDER:**

**(1) GRANTING IN PART MOTION TO COMPEL ARBITRATION (ECF No. 10)**

**AND**

**(2) DENYING EX PARTE MOTION FOR LEAVE TO FILE SUR-REPLY (ECF No. 25)**

21          Plaintiffs Howard Appel and David Cohen bring this action against Defendant

22      Concierge Auctions, LLC ("Concierge") and its agents and employees—Chad

23      Roffers, Frank Martorano, Frank Trunzo, Alexander Gray, Emily Pryor, Katie

24      McMains, Serena Irwin, and Olivia Asavei—challenging the company's solicitation

25      and auctioning practices. (First Amended Complaint ("FAC"), ECF No. 12.)

26      Presently, before the Court is Concierge's motion to compel arbitration of Plaintiffs'

27      claims and to dismiss the case or stay the proceedings pending arbitration or, in the

28      alternative, to transfer venue to the Federal District Court for the Southern District of

New York. (Mot., ECF No. 10.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

For the reasons set forth below, the Court **GRANTS IN PART** Concierge's motion to compel arbitration.

## I.   BACKGROUND

### A.   Relevant Factual Background

Plaintiffs are both real estate investors residing in San Diego, California. (FAC ¶¶ 3-4.) As recently retired business executives, Plaintiffs routinely purchase luxury real estate. (Opp., ECF No. 21, at 24.)  In the last year, Plaintiffs participated in seven Concierge real property auctions, four of which, Plaintiffs were the winning bidders—totaling $14 million in purchase prices. (Mot.-1 at 7.) In each of these auctions, Plaintiffs entered into Bidder terms, identical to the ones currently in question. (*Id.*)

Concierge is a Delaware limited liability corporation with its principal place of business in San Antonio, Texas. (FAC ¶ 6.) It advertises as a large, high-end real estate company that auctions luxury residential real property. (*Id.*) In addition to its representations made on its website, Concierge's project sales manager, Alexander Grey, sent multiple emails to Plaintiffs in California soliciting them to purchase property in Fiji known as "Navado Bay, Banua Levu" (the "Fiji Property"). (ECF Nos. 12 ¶ 20, 10-1 at 6.) On June 20, 2017, Plaintiffs registered to bid in the auction of the Fiji Property (the "Auction") by signing Concierge's form bidder registration agreement ("Bidder Agreement"). (FAC ¶ 23.) Section 27 of the Bidder Agreement contained the following provisions:

> **ARBITRATION; VENUE; PREVAILING PARTY**. The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to these Terms & Conditions, including but not limited to its enforcement, scope and/or interpretation, exclusively to

arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association from time to time in effect (the "Arbitration Rules"). . . .

THE PARTIES UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, AND THE RIGHT TO A JURY TRIAL, BUT THEY GIVE UP THOSE RIGHTS VOLUNTARILY AND AGREE TO RESOLVE ANY AND ALL GRIEVANCES BY ARBITRATION.

(*Id.* ¶ 25.) The Bidder Agreement also contains a choice of law clause that provides:

The respective rights and obligations of the parties with respect to these Auction Terms & Conditions and the conduct of the Auction shall be governed, enforced and interpreted by the laws of the state of New York, without regard for conflicts of law principles.

(*Id.* ¶ 26.) The Bidder Agreement further reads:

The Auction Terms & Conditions and all other publicized elements of the Auction are subject to amendment by the posting of notices or by oral announcements made before or during the Auction. By participating in the Auction, you acknowledge and agree that you are bound by these Auction Terms as well as any additional terms that may be imposed by the Seller or announced prior to or at the Auction by Concierge. . . .

CONCIERGE . . . RESERVE[S] THE RIGHT TO MODIFY OR AMEND ANY TERMS OF THE AUCTION, THE AUCTION METHOD OR PARTICULAR CONDITIONS OF THE AUCTION UPON ANNOUNCEMENT PRIOR TO OR DURING THE COURSE OF THE AUCTION.

(Decl. of Appel, ECF No. 21-1, at 13, 17.) Both Plaintiffs signed the Bidder Agreement: Appel in person, and Cohen through DocuSign. (FAC ¶ 23.)

On June 28, 2017, Plaintiffs participated in the Auction for the Fiji Property. (*Id.* ¶ 41.) Plaintiffs were the winning bidders in the auction with their $2,375,000 bid and subsequently paid Concierge a $285,000 earnest money deposit. (*Id.* ¶¶ 56, 61, 64.) According to the Complaint, unbeknownst to Plaintiffs, on the morning of

the Auction, the seller of the Fiji Property repudiated the Seller's Agreement, yielding the Fiji Property not for sale at the time the Auction took place. (*Id.* ¶ 52.)

### B.     Procedural Background

Plaintiffs brought suit against Concierge and eight individuals associated with Concierge on November 6, 2017. (Complaint, ECF No. 1.) Plaintiffs' First Amended Complaint is brought in diversity and alleges claims under California's unfair competition law, Racketeering Influenced and Corrupt Organizations Act ("RICO"), and state tort claims. (FAC.) Citing the Arbitration Clause, Concierge filed a motion to compel arbitration, requesting the Court compel arbitration in New York, or transfer the case to New York pursuant to the forum selection clause. (Mot.)

## II.     EX PARTE MOTION FOR LEAVE TO FILE SUR-REPLY

On February 2, 2017, Plaintiffs also filed an ex parte motion for leave to file a sur-reply. (ECF No. 25.) "Although the court in its discretion [may] allow the filing of a sur-reply, this discretion should be exercised in favor of allowing a sur-reply only where a valid reason for such additional briefing exists." *Johnson v. Wennes,* No. 08-cv-1798, 2009 WL 1161620, at *2 (S.D. Cal. April 28, 2009). Neither the federal rules nor the local rules permit a sur-reply as a matter of course.

Plaintiffs claim their sur-reply is necessary to respond to four new arguments raised by Concierge in its Reply (ECF No. 23), but the Court finds Concierge made no new arguments in the Reply. Rather, it appears two of Concierge's purported new arguments are responses to arguments raised in Plaintiff's opposition. First, Concierge discusses the parties' contacts with New York (Reply at 6) to respond to Plaintiffs' contentions that "New York has No Substantial Relationship" to the transaction. (Opp. at 18.) Second, Concierge discusses another broker's involvement in the transactions (Reply at 2) to refute Plaintiffs' allegations that Concierge acted as a broker. (Opp. at 6.) Additionally, for the third argument at issue, Concierge first

raises this standing argument in its supplemental briefing to its initial motion, which was filed and available to Plaintiffs before their opposition was filed. (ECF No. 14 at 7-8.) Thus, Plaintiffs did not need a sur-reply to respond to these arguments.[1] For the fourth and last argument Plaintiff raises, the Court finds that Concierge seeks with its initial motion to arbitrate all claims against itself and its employees in this action, and not only Concierge's claim as Plaintiff contends. Thus, any discussion of Concierge seeking to send the entire action to arbitration is not a new argument raised on reply.

Accordingly, the Court **DENIES** Plaintiffs' ex parte motion for leave to file a sur-reply. (ECF No. 23.)

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Arbitration agreements, "[l]ike other contracts . . . may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Marriott Ownership Resorts, Inc. v. Flynn*, No. 14-00372

---

[1] Given the Court's ruling on this motion, the Court declines to address any arguments going to the merits of Plaintiffs' claims, and rather leave these for an arbitrator to decide. Likewise, the Court denies as moot any requests for judicial notice and evidentiary objections not addressed in this Order. (ECF Nos. 21-4, 21-5, 21-6, 23-1.)

JMS-RLP, 2014 WL 7076827, at *6 (D. Haw. Dec. 11, 2014). Instead, a district court's determinations are limited to (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Threshold issues of arbitrability are presumptively for the district court to decide. *See Martin v. Yasuda*, 829 F.3d 1118, 1122-23 (9th Cir. 2016). However, parties can delegate the power to decide arbitrability to the arbitrator through "clear and unmistakable" evidence of an agreement to do so. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In determining whether the parties delegated arbitrability to the arbitrator, the court applies federal arbitrability law "absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 921 (9th Cir. 2011). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.  DISCUSSION

### A.  The FAA Applies to this Dispute

As an initial matter, Plaintiffs challenge Concierge's use of the FAA to compel arbitration. (Opp. at 16.) Specifically, they argue that the Bidder Agreement did not concern interstate commerce and instead concerned "the sale of a single residential property." (*Id.* at 16-17.)

In enacting the FAA, Congress intended to reach the full range of transactions covered by the Commerce Clause. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Therefore, even if a specific economic activity alone would not affect interstate commerce in a substantial way, the interstate commerce requirement of the FAA is satisfied if the aggregate practice of which that economic activity is a part of affects interstate commerce. *Id.* at 56-57. Furthermore, if some activity of one of the

17cv2263

parties, even if not directly the subject of the contract or transaction at issue, has a nexus to interstate commerce, the FAA applies. *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 282 (holding the FAA applied to a local service contract between a homeowner and termite control company because the termite control company was multi-state in nature and used out-of-state material in performing on the contract).

Plaintiffs cite to a handful of cases where courts found the FAA did not apply to arbitration over real estate transactions. (Opp. at 17 (citing to *SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059 (N.D. Cal. 2002) (finding the FAA does not apply in an arbitration dispute over a real estate sale between an in-state buyer and an out-of-state seller); *Cecala v. Moore*, 982 F. Supp. 609, 612 (N.D. Ill. 1997) (finding the FAA did not apply in arbitration over representations made in residential real estate sale between in-state seller and out-of-state buyer); *Saneii v. Robards*, 289 F. Supp. 2d 855, 859 (W.D. Ky. 2003) (finding FAA does not apply to single sale of residential real estate)).

The cases Plaintiffs cite are distinct from the instant case. The first two cases listed above specifically address an in-state party and in-state property. Here, neither Plaintiff resides in Fiji where the property is located. (FAC ¶¶ 3-4.) Similarly, Concierge is incorporated in Delaware with its principal place of business in Texas. (*Id.* ¶ 6.) Additionally, all of the cases above involve one-time real estate sales.[2] Concierge's sale of the subject real estate was not an isolated transaction from one home owner to another. Rather, the contract placed Plaintiffs within a vast web of connections and commercial transactions with various players around the globe. The Bidder Agreement was for Plaintiffs to participate in an auction to bid against other potential buyers. The Bidder Agreement further allowed Plaintiffs to submit offers

---

[2] *Saneii* touches on more complex transactions relating to land, and discusses the possibility that these transactions would affect interstate commerce. *Saneii*, 289 F. Supp. 2d at 859.

for other properties Concierge listed for sale and was not limited to the Fiji Property. (FAC ¶ 23.) Moreover, because Plaintiffs are real estate investors who have recently purchased other properties from Concierge alone, the Court can infer that Plaintiffs are not using the property solely for their residential use. Instead, it is likely Plaintiffs purchased the Fiji Property for profit, either through property management, rental, or sale of the property, suggesting a more commercial aspect to this transaction.

Finally, the Court finds Defendants engagement in marketing and sales activities for the Fiji Property as well as other properties far beyond the borders of one particular state. *See Berman v. Spruce Peak Realty, LLC*, Nos. 2:11-CV-127, 2:11-CV-128, 2012 WL 6212849, at *6 (D. Vt. Dec. 13, 2012). In Plaintiff's RICO claim, they describe how Defendant's "conduct[ed] the[ir] enterprise in ways that affect interstate commerce" including: interstate website and digital advertisements, phone calls, emails, interstate bank-wire transactions, transmitting writings, pictures, and other electronic media. (FAC ¶¶ 108, 110, 116, 117 (parentheses omitted).) Thus, Concierge demonstrates a nexus to interstate activity.

For the foregoing reason, the Court finds that the FAA applies here.

## B. The Parties Clearly and Unmistakably Delegated Arbitrability

The Court must address who—an arbitrator or the Court—should resolve the parties' disagreement concerning the scope and validity of the Arbitration Clause. Concierge seeks to compel arbitration pursuant to the arbitration provisions of the Bidder Agreement. It contends the Bidder Agreement requires any issue pertaining to "enforcement, scope and/or interpretation" be delegated to the arbitrator, including the validity of the provision itself. (Mot. at 12.) Plaintiffs disagree. Instead, they deny the existence of a delegation clause within the Bidder Agreement, thereby arguing that the validation of the arbitration clause was reserved for this Court. (Opp. at 20-21.)

A district court determines whether an arbitration clause is valid, applicable, and enforceable unless "the parties clearly and unmistakably provide[d] otherwise such as by delegating the issue of arbitrability to arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The Ninth Circuit has held that the incorporation of the American Arbitration Association ("AAA") Rules into an arbitration agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

There is a split within the Ninth Circuit as to whether the scope of *Brennan* is limited to delegation clauses in cases involving sophisticated parties. The Court agrees with the authorities that find that *Brennan* is not limited by the sophistication of parties. *See Esquer v. Educ. Mgmt. Corp.*, __ F. Supp. 3d __, No. 17-cv-1240-BAS-AGS, 2017 WL 5194635, at *4 (S.D. Cal. Nov. 9, 2017). Nonetheless, the Court is mindful of the concerns reflected by several courts, which emphasize that "an inexperienced individual untrained in the law" is less likely to be reasonably expected to understand the incorporation of arbitrator rules into an arbitration agreement. *See, e.g.*, *Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016). However, these concerns are not present here. The Court is satisfied with Plaintiffs' level of sophistication to the extent they can understand the provisions within this arbitration agreement. As self-described real estate investors that have engaged in various real estate ventures, and who have seen and negotiated similar Bidder Agreements with Concierge, Plaintiffs are not the "ordinary customers who could not be expected to appreciate the significance of incorporation of the AAA rules," in which courts intend to protect. *See, e.g.*, *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016); *cf. Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) ("Nearly every decision in the Northern District of California has consistently found effective delegation of arbitrability regardless of the sophistication of the parties."); *Seaman v. Private Placement Capital Notes II, LLC*, No. 16-CV-00578-

BAS-DHB, 2017 WL 1166336, at *4 (S.D. Cal. 2017) (applying the dicta in *Brennan*, stating "there is no requirement that the parties be sophisticated or that the contract be a commercial contract before a court may conclude that incorporation of the AAA Rules is a clear and unmistakable evidence of intent to arbitrate arbitrability"). Additionally, even if Plaintiffs were unsophisticated, the Bidder Agreement is not "so complicated that it is not reasonable to find a clear and unmistakable intent between the parties to delegate." *Esquer*, 2017 WL 5194635, at *4.

Plaintiffs neglect to address the entire arbitration provision within their argument. The Arbitration Clause provides in part: "The parties agree to submit all controversies, disputes, claims and matters of difference arising out of or relating to these Terms & Conditions, including . . . its enforcement, scope and/or interpretation, exclusively to arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association."(FAC ¶ 25.) According to Rule 7(a) of the AAA Rules, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Rule 7(a) (effective as of October 1, 2013). This rule delegates all jurisdictional questions to the arbitrator, including arbitrability. Accordingly, by incorporating the AAA Rules into their arbitration agreement, the parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator. *See Brennan*, 796 F.3d at 1130; *see also Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. Mar. 18, 2016) (collecting cases holding that incorporation of arbitrator rules manifests clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability).

Additionally, the Court can look within the Bidder Agreement's terms to find the parties' requisite intent to delegate in this case. *See Han v. Synergy Homecare Franchising LLC*, 2017 WL 446881 (N.D. Cal. Feb. 2, 2017) ("When the contractual language is clear, there is no need to consider extrinsic evidence of the parties'

intentions; the clear language of the agreement governs.") (quoting *Berman v. Dean Witter & Co.*, 119 Cal. Rptr. 130, 133 (Cal. App. 1975)). Both Plaintiffs signed the Bidder Agreement containing the arbitration provision. The arbitration provision explicitly requires disputes and controversies regarding the "enforcement, scope and/or interpretation" to be arbitrated. (FAC ¶ 25.) Consequently, the Court finds the parties clearly and unmistakably delegated the question of arbitrability.

### C.    Arbitration Provision is Enforceable

Despite a clear and unmistakable delegation of arbitrability, an arbitration provision may still be found unenforceable if delegation itself is unconscionable. *Rent-A-Ctr.*, 561 U.S. at 74. Thus, the delegation enforcement is only proper "in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability." *See Mohamed v. Uber Techs.*, Inc., 848 F.3d 1201, 1209 (9th Cir. 2016). Because an arbitration provision is severable from the contract as a whole, and a delegation clause is severable from an arbitration provision, the party must specifically attack the arbitration clause. *Rent-A-Ctr.*, 561 U.S. at 71-74; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (finding "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

It is evident that the majority of Plaintiffs' arguments challenge the enforcement of the contract as a whole, instead of just the arbitration clause. Specifically, Plaintiffs contend that "[h]ad Concierge disclosed the truth [about seller rescinding], Plaintiffs would not have participated in the Auction, much less bid or increase their bid at Concierge's insistence." (Opp. at 12.) Further, Plaintiffs argue they were illegally solicited as prospective buyers of the Fiji Property by Concierge's "unlicensed real estate broker activities." (*Id.* at 6.) The notion of the majority of Plaintiffs' arguments is they were fraudulently induced into the contract thereby making it, as well as the arbitration clause, void. *See Prima Paint Corp. v. Flood &*

*Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it."). Accordingly, the Court will only consider Plaintiffs' arguments as to the unconscionability of the parties' agreement to arbitrate.

### i. California Law Applies

Next the Court decides whether to apply New York or California law in determining the enforceability of the arbitration provision. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Because Plaintiffs brought this lawsuit in California, the Court applies California's choice of law rules to determine the unconscionability issue. Here, the parties' Bidder Agreement contains a New York choice-of-law provision. California courts generally honor the parties' choice-of-law to govern their claims in dispute, unless: (1) "the chosen state has no substantial relationship to the parties or the transaction" and (2) "there is no other reasonable basis for the parties' choice." *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (Cal. 1992). If either test is met, the Court must then determine whether the chosen state's law is contrary to a fundamental policy of California. *Fastbucks*, 621 F.3d at 1002-03 (9th Cir. 2010).

New York has no substantial relationship to the parties or the transactions at issue here. Neither party is located in New York, nor is there evidence to suggest that either party conducts substantial business in New York. *Cf.* Restatement 2d of Conflict of Laws § 187 cmt. f (recognizing that a "substantial relationship" with the chosen state exists where "one of the parties is domiciled or has his principal place of business"). This action's only ties to New York is a provision within the Bidder Agreement indicating Plaintiffs' intent to bid on a property in New York at an unspecified time in the future. (ECF No. 23 at 6 n.4.) Without more, the Court will

not construe this potential interaction as a substantial relationship with New York. Further, as Concierge concedes, there is no material difference between California and New York law on the issue of unconscionability. (Mot.-1 at 14.) Accordingly, California law applies.

### ii. The Delegation Provision is Not Unconscionable

Plaintiffs argue the arbitration provision, including its delegation clause, are unenforceable because it is both procedurally and substantively unconscionable. Under California law, unconscionable contracts are those that are "so one-sided as to shock the conscience." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016). Finding that a contract is unenforceable on grounds of unconscionability requires a substantial degree of unfairness beyond "a simple old-fashioned bad bargain." *Id.* An agreement may be found to be "invalid if it is *both* procedurally and substantively unconscionable." *Sanchez v. Carmax Auto Superstores California LLC*, 168 Cal. Rptr. 473, 477 (Cal. Ct. App. 2014) (emphasis added). "Procedural unconscionability focuses on oppression and surprise due to unequal bargaining power, and substantive unconscionability turns on overly harsh or one-sided results." *Id.* California courts apply a "sliding scale" to determine whether to invalidate an agreement that is both procedurally and substantively unconscionable: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Pyschare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749-50 (Cal. 2015); *see also Pinnacle Museum Tower*, 282 P.3d 1217, 1224-25 ("[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability.").

### a. Procedural Unconscionability

A "[p]rocedural unconscionability analysis focuses on oppression or surprise." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (internal quotations omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* (internal quotations omitted). Here, Plaintiffs raise three arguments why the delegation provision is procedurally unconscionable.

As a preliminary note, Plaintiffs cite to *Nagrampa* to counter the significance of their sophisticated business status. (Opp. at 25). However, *Nagrampa* presents issues of employment contracts that revolve around the inherently unequal bargaining structure of franchises. *Nagrampa*, 469 F.3d at 1282-83. As stated above, Plaintiffs are self-described real estate investors that have engaged in previous multi-million dollar deals in high end luxury real estate. (FAC ¶¶ 4-5; Decl. of McMains ¶ 4.[3]) Nonetheless, the Court will consider the parties' sophistication in respects to the oppressiveness and surprise elements of procedural unconscionability,

First, Plaintiffs argue the arbitration clause is contained in an adhesion contract against a powerful "global commercial entity," in which they had no bargaining power. (Opp. at 24.) Procedural unconscionability often arises when the contract in question is one of adhesion. *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145-146 (Cal. Ct. App. 2003). A contract of adhesion is a "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* Finding that a contract is one of adhesion essentially is finding procedural unconscionability. *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 2001). This is because when a weaker party is presented with a

---

[3] The Court denies Plaintiffs' objections to this evidence.

"take it or leave it" clause and afforded no opportunity to meaningfully negotiate it, oppression—and therefore, procedural unconscionability—are present. *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002). However, the fact that a contract is adhesive is insufficient by itself to render an arbitration clause unenforceable. *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012).

The Court acknowledges that that the Bidder Agreement, which includes the delegation clause, contains some elements of an adhesion contract. The Bidder Agreement has standard bidder terms used throughout auctioneer commercial practices. (ECF No. 23 at 7.) It is presented to all individuals interested in participating in Concierge's auctions. (*Id.*) Despite Concierge's contentions that Plaintiffs negotiated a "deal" with Concierge,[4] (*id.*), there is no indication that Plaintiffs were ever given an opportunity to negotiate any terms within their contracts. However, there is also no indication that they tried.

On the other hand, the Agreement also contains elements that support a finding that it was not a contract of adhesion. As previously mentioned, this contract was not essential to Plaintiffs. They did not have to participate in the auction, nor did they have to continue contracting with Concierge; yet, there is no evidence that they sought real estate transactions with other companies. *Cf. Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (2005) ("Oppression refers not only to an absence of power to negotiate the terms of a contract, but also the absence of reasonable market alternatives."). Further, the negotiations were absent a superior bargaining party. Plaintiffs fail to demonstrate they were the weaker party considering their level of business sophistication and past experiences with similar multi-million dollar transactions. (*See* Decl. of McMains ¶ 4 (stating Plaintiffs previously purchased four

---

[4] The deal Concierge refers to was a post-contract performance dispute of Concierge's fees not regarding the negotiation of the terms of the agreement. (Decl. of Appel ¶ 17.) The Court denies Concierge's objections to this evidence. (ECF No. 23-1.)

properties with Concierge, totaling almost $14 million in purchase prices.) Ultimately, the Court finds that a determination on this matter would have little significance to the overall unconscionability analysis because a finding of an adhesion contract establishes only some degree of procedural unconscionability. In and of itself, it is not enough to find that a contract, or one of its provisions, is unenforceable. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (2015).

Second, Plaintiffs further suggest there was procedural unconscionability because Concierge did not attach the AAA rules to the arbitration provision. (FAC ¶ 25.) The Court notes that Concierge is silent on this issue.

Federal courts in the Ninth Circuit have come to different conclusions on this issue. Some federal courts note the failure to provide a copy of arbitration rules adds to the degree of procedural unconscionability. *See Raymundo v. ACS State & Local Solutions, Inc.*, No. C 13-00442 WHA, 2013 WL 2153691, at *11 (N.D. Cal. May 16, 2013); *Williams v. Am. Speciality Health Group, Inc.*, 2013 WL 1629213, at *4 (S.D. Cal. Apr. 16, 2013); *Cisneros v. Am. General Fin. Servs., Inc.*, No. C 11-02869 CRB, 2012 WL 3025913, at *6 (N.D. Cal. July 24, 2012); *Rosendahl v. Bridgepoint Educ., Inc.*, No. 11CV61 WQH (WVG), 2012 WL667049, at *8 (S.D. Cal. Feb. 28, 2012). However, in contrast, numerous federal courts render this fact insignificant. *See Morgan v. Xerox*, No. 2:13-cv-00409-TLN-AC, 2013 WL 2151656, at *9-11 (E.D. Cal. May 16, 2013); *Collins v. Diamond Pet Food Processors of Cal.*, No. 2:13-CV-00113-MCE-KJN, 2013 WL 1791926, at *5 (E.D. Cal. Apr. 26, 2013); *Miguel v. JPMorgan Chase Bank, N.A.*, No. CV12-3308 PSG (PLAx), 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013) *Hodsdon v. DirectTV*, LLC, No. C 12-02827 JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012); *Wilson v. United Health Group, Inc.*, No. 2:12-cv-01349-MCE-JFM, 2012 WL 6088318, at *4 (E.D. Cal. Dec. 6, 2012); *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012); *Sullivan v. Lumber Liquidators*, No. C-10-1447 MMC, 2010 WL 2231781, at *5 (N.D. Cal. June 2, 2010).

California contract law allows parties to incorporate the terms of another document by reference into an agreement. *Troyk v. Farmers Group, Inc.*, 90 Cal. Rptr. 3d 589, 610 (2009). "For the terms of another document to be incorporated into the document executed by the parties, the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he or she must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Collins*, 2013 WL 1791926, at *5 (quoting *Shaw v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 2d 850, 856 (1997)) (internal quotation marks omitted). Here, the Bidder Agreement clearly states that the arbitration will be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." (Decl. of Appel at 21.) This is sufficiently clear and unambiguous to incorporate these rules into the contract by reference. Furthermore, the sophisticated Plaintiffs can easily acquire the applicable rules that are available on the AAA website.

Furthermore, the Court recognizes that requiring parties to attach arbitration rules to their agreements to avoid a finding of procedural unconscionability would place arbitration contracts on a different footing than other contracts as to the doctrine of incorporation by reference, which is prohibited by the Supreme Court. *Concepcion*, 563 U.S. at 366 ("[W]e have repeatedly referred to the [FAA's] basic objective as assuring that courts treat arbitration agreements like all other contracts.") (internal quotation marks omitted); *see also Lane v. Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 813 (2014) ("Like any other contract, an arbitration agreement may incorporate other documents by reference."). Consequently, the incorporation of these documents by reference does not support Plaintiff's claim that the delegation provision was oppressive. *See Do v. CashCall, Inc.*, SACV 13-01242 JVS (RNBx), 2013 WL 12116340, at *6 (C.D. Cal., 2013).

Lastly, Plaintiffs argue the "the delegation language in the Arbitration Provision here is buried in prolix at the bottom of page nine of an eleven page

document." (Opp. at 18.) However, even a cursory review of the Bidder Agreement reveals the arbitration provisions are not hidden. Paragraph 27 of the Agreement is the second longest provision of the contract. (Decl. of Appel at 21.) While the typeface is not overly large, it appears to be standard size and font that corresponds with the rest of the Agreement. (*Id.*) The title "Arbitration; Venue; Prevailing Party" is bolded and in all caps and does not contain deceptive or overly confusing language. (*Id.*) The Bidder Agreement further required Plaintiffs pay $100,000 "bidder deposit," a relatively large sum of money. "The amount of the contract and business plans of the parties reflect a level of sophistication and business planning indicative of sophisticated business entities." *Everest Biosynthesis Group, LLC v. Biosynthesis Pharma Grp. Ltd.*, No. 17CV1466 JM(BGS) 2018 WL 35123, at *4 (addressing how the specific facts that the parties were an industrial hemp supplier and CBD manufacturers who contracted for $2 million disfavored a procedurally unconscionable finding). Most notable, however, is this is the seventh time Plaintiffs have seen this provision in their relatively short contracts within the last year. (*See* Decl. of McMains ¶¶ 4-5.[5]) Plaintiffs cannot not now claim they were surprised by the existence of the arbitration provision.

The circumstances weigh against a finding of procedural unconscionability. Although Concierge introduced the standard Bidder Agreement on a take it or leave it basis, Plaintiffs are relatively sophisticated and had the capacity to understand the Bidder Agreement's delegation provision.

### b. Substantive Unconscionability

Plaintiffs contend the Bidder Agreement's two unilateral modification clauses render the arbitration provision substantively unconscionable. (Opp. at 26.)

Under the circumstances here, where the unilateral modification clauses are in distinct provisions of the contract, the unilateral modification clauses may be severed

---

[5] The Court denies Plaintiffs' objections to this evidence.

from the arbitration provision. Therefore, it does not make the arbitration provision itself unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). Plaintiffs may argue that the unilateral modification clause itself is unenforceable during arbitration. *See Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 n.9 (9th Cir. 2013) (en banc). Under California law, the fact that one party has the unilateral right to modify an arbitration agreement does not automatically make the agreement illusory: "the discretionary power to modify or terminate an agreement carries with it the duty to exercise that power in good faith and fairly." *John v. Hanlees Davis, Inc.*, No. 12-CV-2529, 2013 WL 3458183, at *6 (E.D. Cal. July 9, 2013) (determining, under state law, that one party's unilateral right to modify an agreement did not render the arbitration clause illusory or unenforceable); *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 514 (Cal. Ct. App. 2013) ("[I]t has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract." (citations omitted)). California courts "have held the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins*, 840 F.3d at 1033 (listing California cases holding implied covenant of good faith and fair dealing limits parties' unconscionable exercise of the unilateral modification clause).

Plaintiffs do not indicate that Concierge has ever exercised its right to modify the Bidder Agreement. Further, their agreement was subject to the limitation that Concierge had the express obligation to provide Plaintiffs with notice of amendments to the contract orally or through Concierge's auction website. (Decl. of Appel at 17); s*ee Migule v. JP Morgan Chase Bank, N.A.*, No. 12-CV-3308, 2013 WL 452418, at *6 (C.D. Cal. Feb. 5, 2013) (citing *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal.

Rptr. 2d 533, 541-42 (Cal. Ct. App. 1998) ("[A]rbitration agreements that allow a party to prospectively modify them with notice are enforceable and not illusory.")).

Although Plaintiffs may shown a slight degree of procedural unconscionability as to the adhesion contract, they nonetheless fail to establish that the arbitration provision, including the delegation clause, is substantively unconscionable. Because California law requires a showing of both types of unconscionability, *Armendariz*, 6 P.3d at 690, Plaintiffs have not met their burden to show the arbitration provision, including the delegation clause, is unenforceable, and the Court will enforce the provision.

Accordingly, the Court **GRANTS IN PART** Concierge's motion to compel arbitration.

### D.   Arbitration Location

Although the Court finds the conditions compelling arbitration were satisfied, it lacks discretion to compel arbitration outside its district. 9 U.S.C. § 4 ("The hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed."); *Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941). This is true even when the arbitration agreement specifies a venue. *See Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 883-84 (N.D. Cal. 2008) (holding that although parties designated Pennsylvania as the forum for arbitration, *Continental Grain* required the court to compel arbitration in the Northern District of California); *Homestead Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131 (N.D. Cal. 2003) (following *Continental Grain* and compelling arbitration in the Northern District of California when parties designated Missouri as the arbitration forum). Although this Court recognizes the unfavorable reception from courts both in and out of this circuit as well as the inconvenience to Concierge, the *Continental Grain* rule remains the law of this circuit. *See Homestead Lead*, 282

F. Supp. 2d at 1143-44 (N.D. Cal. 2003) ("The Ninth Circuit's 1941 decision in *Continental Grain Co. v. Dant & Russell* remains the controlling authority" for determining the situs of a compelled arbitration).

The Court may permissibly stay this action pending a resolution of the arbitration issues. The FAA prescribes that when a matter referable to arbitration is brought before the court, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Accordingly, the Court **STAYS** all proceedings in this action and **ORDERS** the parties to proceed to arbitration in the Southern District of California. *See Bencharsky*, 625 F. Supp. at 884; *Cabot Creekside 8 LLC v. Cabot Inv. Props., LLC*, No. 10-00937-MMM(Ex), 2011 WL 13223878, at *20 (C.D. Cal March 21, 2011) ("[N]umerous courts have held that although a court cannot compel arbitration outside its district, an order compelling arbitration within its district is an adequate alternative.").

## V.  CONCLUSION

In light of the foregoing:

1.  The Court **GRANTS IN PART** Concierge's motion to compel arbitration (ECF No. 10).

2.  The Court **DENIES** Plaintiff's motion for leave to file a sur-reply (ECF No. 25).

3.  The Court **STAYS** this action as to all parties and all claims. *See* 9 U.S.C. § 3.

4.  The Court further **ORDERS** the parties to proceed to arbitration for a determination of arbitrability and possible arbitration of Plaintiffs'

claims in the manner provided for in the Bidder Agreement. *See* 9 U.S.C. § 4.

5. The Court directs the Clerk of the Court to **ADMINISTRATIVELY CLOSE** this action. The decision to administratively close this action pending the resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

**DATED:  April 13, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv2263